

*Henry E. Mazurek*
*Partner*
*Direct (212) 655-3594*
*Fax (646) 682-9222*
*hem@msf-law.com*

March 27, 2020

Hon. Raymond J. Dearie
United States District Court Judge
United States Courthouse
225 Cadman Plaza East
Courtroom 10A S
Brooklyn, NY 11201

Re: *United States v. Anthony Zottola*, 18-cr-609 (RJD)

Dear Judge Dearie:

We write on behalf of defendant Anthony Zottola in the above-referenced matter. We respectfully seek emergency relief from the dangerous and unsanitary conditions under which Mr. Zottola is being detained at the Metropolitan Correction Center ("MCC") in Manhattan, which expose him to increased risk of contracting Covid-19. The Bureau of Prisons' ("BOP") 30-day suspension of legal visits, and limitation of legal calls also presents a further interference with Mr. Zottola's access to counsel to defend himself against the exceptionally serious charges in the Indictment. Based on these emergent and unprecedented conditions related to the Covid-19 pandemic, we respectfully request that the Court: (1) reconsider Mr. Zottola's motion for bail under the conditions previously proposed to this Court, *see* Dkt. 169 (Dec. 18, 2019);[1] or (2) temporarily release Mr. Zottola to home incarceration on the proposed bail conditions for the duration of the Covid-19 public health crisis pursuant to 18 U.S.C. § 3142(i).

**1. The Severe Risks of Covid-19 to Mr. Zottola as an MCC Inmate**

As the Court is doubtless aware, New York has become a center of the Covid-19 spread worldwide. The conditions in New York State are rapidly deteriorating, and the conditions within BOP facilities are worse yet. On March 11, 2020, the World Health Organization ("WHO") officially classified the new strain of coronavirus, Covid-19, as a pandemic. As of March 27, 2020, Covid-19 has infected at least 550,000 worldwide, leading over 25,000 deaths. In the United States, approximately 86,000 have been infected, leading to over 1,000 death. These numbers almost certainly underrepresent the true scope of the crisis; test kits in the United States have been inadequate to meet demand. New York has been labeled the new "epicenter" of the pandemic worldwide. As of March 26, 2020, there were more than 35,000 cases in New York, and at least 385 deaths. *See* "Coronavirus in

---

[1] The proposed conditions include: (1) a $5 million bond signed by Mr. Zottola and nine other financially responsible individuals, largely secured by seven properties, (2) Home detention with electronic monitoring (by G.P.S. tracking device), (3) Restricted computer access, limited to reviewing discovery provided in this case and other case-related materials provided by his attorneys, with Internet access strictly prohibited in the home, (4) Telephone access limited to a single government monitored land-line telephone approved by Pretrial Services to make and receive calls only to and from phone numbers agreed upon by counsel for Mr. Zottola and the government; no cellular/mobile telephones authorized in the house. *See* Dkt. 169 at 3-4.

the U.S.: Latest Map and Case Count," *New York Times* (Mar. 27, 2020).[2] New York health officials estimate that the number of hospitalizations in New York State will double every two days over the course of the next two to three weeks. New York's cases of Covid-19 now represent 7% of the cases worldwide.

Measures promoting "social distancing," have been implemented throughout the nation, with particularly stringent measures in place in New York State, to slow the virus' spread. On March 13, 2020, the White House declared a national emergency, under Section 319 of the Public Health Service Act, 42 U.S.C. § 247(d)).[3] "Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak," The White House (Mar. 13, 2020). On March 16, 2020, the White House issued guidance recommending that, for the next eight weeks, gatherings of ten persons or more be canceled or postponed.[4] Sheri Fink, "White House Takes New Line After Dire Report on Death Toll," *New York Times* (Mar. 17, 2020). On March 20, 2020, Governor Andrew Cuomo ordered 100 percent of all non-essential workers to remain home, effectively shuttering New York State's entire economy.[5] Keshia Clukey and Henry Goldman, "Cuomo Orders 100% of Nonessential N.Y. Workforce to Stay Home*,*" *Bloomberg News* (Mar. 20, 2020). These drastic measures followed the issuance of a report by British epidemiologists, concluding from emerging data that 2.2 million Americans could die without drastic intervention to slow the global spread of the deadly disease. *See* Fink, "White House Takes New Line After Dire Report on Death Toll," *New York Times*.

Cases of Covid-19 have already been confirmed in the MCC. As of March 26, there is public reporting that at least two inmates had tested positive—because of the traffic through the jail from the outside world, further spread is almost inevitable. "Releases, infections, fear: U.S. coronavirus crisis in jails and prisons looms," *ABC News* (Mar. 26, 2020).[6] But Mr. Zottola cannot avail himself of the public health and safety measures available to other Americans.

"Social distancing" is not an option for Mr. Zottola. Instead the conditions of confinement at the MCC, which houses approximately 700 inmates, create an optimal environment for the transmission of contagious disease. *See* Joseph A. Bick, "Infection Control in Jails and Prisons*,*" *Clinical Infectious Diseases* 45(8): 1047-1055 (2007);[7] *see also* "An Epicenter of the Pandemic Will Be Jails and Prisons, If Inaction Continues," *The New York Times* (Mar. 16, 2020).[8] People who work in the facility leave and return daily; people deliver supplies to the facility daily; inmates were having social, legal and medical visits regularly after the initial spread of the virus

---

[2] Available at: https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

[3] Available at: https://www.whitehouse.gov/presidential-actions/proclemation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[4] Available at: https://www.nytimes.com/2020/03/17/us/coronavirus-fatality-rate-white-house.html?action=click&module=Spotlight&pgtype=Homepage.

[5] Available at: https://www.bloomberg.com/news/articles/2020-03-20/n-y-gov-cuomo-100-percent-of-workforce-must-stay-home.

[6] Available at: https://abcnews.go.com/US/releases-infections-fear-us-coronavirus-crisis-jails-prisons/story?id=69803066.

[7] Available at https://doi.org/10.1086/521910.

[8] Available at: https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html.

prior to the BOP's decision to suspend social and legal visits for 30 days on March 13, 2020, and new inmates continue to be brought into the facility from the street. "Federal Bureau of Prisons Covid-19 Action Plan."[9] Moreover, cleaning supplies, hand sanitizer and soap are extremely scarce, effectively prohibiting Mr. Zottola from practicing the personal hygiene recommended to minimize the risk of infection. *See* "Despite coronavirus warnings, federal Bureau of Prisons still transporting inmates: Sources," *ABC News* (Mar. 23, 2020) ("The BOP is running on empty with hand sanitizer, soap and masks, sources said, adding that the BOP doesn't have the ability to order more due to backorder.").[10] It is our understanding that the communal areas and devices, including the computers and phones touched by virtually every detainee at the MCC, are seldom cleaned. Public health experts are unanimous in their opinion that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," and "infection control is challenging in these settings."[11] *See* "Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (Mar. 2, 2020). These conditions put Mr. Zottola at a heightened risk of contracting Covid-19.

2. **The Court Should Release Mr. Zottola Under the Stringent Proposed Conditions to Protect him from the Dangers of Facing Covid-19 Within the MCC**

   i. **The Health Risks to Mr. Zottola are a Basis for Reconsidering his Bail Application**

As an initial matter, the dangerous Covid-19 pandemic, and Mr. Zottola's exposure at the MCC constitutes a changed circumstance permitting reconsideration of the Court's prior ruling. *See* 18 U.S.C. § 3142(f) (a detention hearing under 18 U.S.C. § 3142 "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."). Courts in this Circuit have reconsidered their earlier denials of bail for precisely this reason. *See United States v. Stephens*, No. 15-cr-95 (AJN), [Dkt. 2798] at 2 (Mar. 19, 2020 S.D.N.Y.) (citing as a changed circumstance that "since the March 6 hearing, the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent . . . The magnitude of this risk has grown exponentially since the March 6 hearing before this Court").

The gratuitous risk to Mr. Zottola's health due to his continued confinement in the MCC's crowded quarters warrants his release to home detention under the stringent conditions proposed, which the Court itself recognized are substantial. Under the Bail Reform Act, "[a]comprehensive view of the danger the Defendant poses to the community requires considering all factors," including the Covid-19 pandemic. *Id.* (granting bail based, in part, on the risk that Covid-19 poses to detainees at the MCC). And, as other courts in this district have recognized, the risks of contracting and spreading Covid-19 based on overcrowding in the jails itself represents a danger to the community, and a countervailing consideration in favor of release: "Our community includes the

---

[9] Available at: https://www.bop.gov/resources/news/20200313_covid-19.jsp.

[10] Available at: https://abcnews.go.com/Health/warnings-bureau-prisons-transporting-inmates-sources/story?id=69747416.

[11] Available at: https://bit.ly/2W9V6oS.

people incarcerated . . . those who work there and those who live and interact with those who work there. And let's not kid ourselves. The more people we crowd into that facility, the more we're increasing the risk to the community." *United States v. Raihan*, No. 20-cr-68 (BMC) (JO), [Dkt. No. 20] (E.D.N.Y. Mar. 12, 2020) (deciding to continue a criminal defendant on pretrial release rather than order him remanded to the Metropolitan Detention Center due, in part, to the Covid-19 crisis).

Recognizing the exceptional and unprecedented nature of the Covid-19 public health crisis, courts in this Circuit have begun releasing defendants on bail in serious cases, including cases involving credible allegations of violence. *See, e.g., United States v. Eli*, 20 Cr. 50 (RJD) (RER) (E.D.N.Y. Mar. 24, 2020) (releasing, over government's objection, defendant charged with multiple robberies involving guns and drugs, because of COVID risk); *United States v. Baker*, 20 Cr. 125 (KMK) (S.D.N.Y. Mar. 24, 2020) (releasing defendant charged with conspiracy and possession with intent to distribute controlled narcotics substances); *United States v. Santiago Ramos*, 20-cr-04 (ER) [Dkt. 21] (S.D.N.Y. Mar. 19, 2020) (denying government's request for revocation and detention despite government's allegations defendant had continued to commit felonious conduct and had violated his initial conditions of pre-trial release by seeking to defraud additional investors and communicating with witnesses and victims without counsel, due to the risk of the Covid-19 virus); *United States v. Brandon*, 19 Cr. 644 (GBD) (S.D.N.Y. Mar. 19, 2020) (releasing defendant awaiting sentencing on a guilty plea to escape from federal custody in failing to report to a halfway house, based on an underlying 24-month sentence for violation of his supervised release from a 2009 conviction for access device fraud and identity theft, because of Covid-19 risk over government's objection that defendant was a serial and continuous violator of the law). The Attorney General has similarly issued a directive on March 26, 2020 "to ensure that [BOP] uses home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody." Memorandum from Attorney General William P. Barr to the Director of Bureau of Prisons re: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020).[12]

The danger to Mr. Zottola and the community posed by his continued detention in the crowded MCC facility where the infection is already spreading tips the balance in favor of his release—particularly given the stringent bail conditions proposed, which prohibit his movement for anything other than medical care, and restrict access to communication devices. *See, e.g., Stephens*, No. 15-cr-95 (AJN), [Dkt. 2798] at 2 (Mar. 19, 2020 S.D.N.Y.) (noting that "inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop," in granting bail); *see also* Standing Order in Criminal Proceedings Before Judge Keith P. Ellison During Pendency of National Emergency (S.D. Texas Mar. 17, 2020) (Noting, inter alia, that one of the bail factors "is the person's 'physical and mental condition' and that the "conditions that have resulted in the presidential declaration of a National Emergency constitute[s] material information that has not previously been considered by the Court.").

### ii. The Covid-19 Crisis is the Most Recent Interference with Mr. Zottola's Sixth Amendment Right to Counsel

The response to the Covid-19 epidemic is also only the latest incident interfering with Mr. Zottola's Sixth Amendment right to counsel. In an effort to prevent or reduce the spread of Covid-19 in the jail, on March 13, 2020 the MCC suspended social and legal visits for 30 days. *See* "Federal Bureau of Prisons Covid-19 Action

---

[12] Available at: https://www.documentcloud.org/documents/6819695-AG-s-Memo-on-BOP-HomeConfinement.html.

Plan." Although unmonitored legal calls can still be arranged,[13] Mr. Zottola takes those calls in the presence of other inmates, and is thus constrained to speak freely with counsel. This effective closure of the MCC, although an understandable health precaution, comes on the heels of an approximately two week lockdown earlier this month, during which legal visits were suspended.[14] *See* "MCC Returns to Normal Operations After Smuggled Gun Triggers Lockdown," *NBC New York* (Mar. 11, 2020).[15] Prior to that, since Mr. Zottola's transfer to the MCC in July 2019, counsel has faced months of difficulties in accessing Mr. Zottola. We understand that the impediments we have faced in visiting our client at the MCC corresponded to long periods of restricted or prohibited inmate movement in the facility, periods without any attorney or family visitation, and limits to access to the cafeteria and medical floors.

Because the charges against Mr. Zottola are extremely serious, and he faces the harshest penalties available in the federal system, his inability to regularly access counsel severely prejudices his defense. Without Mr. Zottola, counsel faces obstacles in investigating and preparing both the mitigation submission required to avoid authorization of death as a potential penalty in the event of his conviction, and his defense to the charges against him. These obstacles also necessarily prolong the time that Mr. Zottola will have to wait before trial, and thus the time that he is held in pretrial detention although presumed innocent. The continued interference with Mr. Zottola's Sixth Amendment right to counsel is an independent basis for his release on bail pending trial. *See, e.g., Stephens*, No. 15-cr-95 (AJN), [Dkt. 2798] at 5 (finding that defendant's release was "necessitate[d]" by "the obstacles the current public health crisis poses to the preparation of the Defendant's defense," which "impacts the Defendant's ability to prepare his defenses. . . ."); *see also United States v. Rodriguez*, 12-CR-83S, 2014 WL 4094561, at *8 (W.D.N.Y. Aug. 18, 2014) (recognizing that the burden imposed by conditions of confinement on the "quality of attorney-client relationship" could warrant release on bail); *United States v. Bodmer*, 03 CR 947 (SAS), 2004 WL 169790, at *3 (S.D.N.Y. Jan. 28, 2004) (granting bail, in part, based on the consideration that the defendant faces serious criminal charges, and pretrial detention may hinder his ability to gather evidence, contact witnesses, or otherwise prepare for his defense . . . . Moreover, Bodmer will undoubtedly be crucial to his lawyers' understanding of the . . . subject of the indictment.").

### 3. In the Alternative, the Court Should Temporarily Release Mr. Zottola for the Duration of the Covid-19 Pandemic

In the alternative, the Court should temporarily release Mr. Zottola pursuant to 18 U.S.C. § 3142(i) pending the resolution of the Covid-19 outbreak in New York. 18 U.S.C. § 3142(i) provides that, where a detention order has been issued, "a judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." The health risks posed by the Covid-19 outbreak, and the logistical impediments to Mr. Zottola's access to counsel are "compelling reasons" warranting his temporary release.

---

[13] Counsel for Mr. Zottola has made an effort to remain in contact by legal phone calls.

[14] The lockdown earlier this month, preventing any access or communication with Mr. Zottola prompted our earlier motion to the Court. (Dkt. 186.)

[15] Available at: available at: https://www.nbcnewyork.com/investigations/mcc-returns-to-normal-operations-after-smuggled-gun-triggers-8-day-lockdown/2321864/.

Indeed, several courts in this Circuit have ordered defendants' temporary release to home incarceration "based on compelling reasons related to the current health crisis." *United States v. Hudson*, 19-cr-496 (CM), [Dkt. 72] at 8 (Mar. 23, 2020 S.D.N.Y.) (temporarily releasing, over government objection, defendant charged with narcotics conspiracy, loansharking, and extortion, whose bail application was twice denied due to the danger he posed to the community based on the violent nature of the charges, due to the Covid-19 crisis and the ensuing difficulty of his attorneys in meeting defendant in preparation for his approaching trial); *accord United States v. Vizzari*, No. 19-cr-767 (VSB) [Dkt. 21] (Mar. 20, 2020 S.D.N.Y.) (temporarily releasing defendant awaiting sentencing after pleading guilty to possession with intent to distribute heroin and violation of parole in a prior conviction for possession with intent to distribute heroin based on Covid-19 health crisis); *United States v. Perez*, 19-cr-297 (PAE) [Dkt. 62] at 1 (Mar. 19, 2020 S.D.N.Y.) (granting the defendant's motion "pursuant to 18 U.S.C. § 3142(i) for temporary release from custody during the current COVID-19 pandemic . . . conclude[ing] that compelling reasons exist for temporary release of the defendant from custody during the current public health crisis" over government's objection that defendant (1) posed a substantial risk to the community as demonstrated by his four prior felony convictions and multiple instances where defendant committed crimes while on pre-trial release and parole and (2) posed a severe flight risk as demonstrated by his flight and detention for bail jumping in the instant matter as well as eight prior arrests for failure to appear, releasing defendant charged with attempted inducement of a minor to engage in illegal sexual conduct); *Stephens*, No. 15-cr-95 (AJN), [Dkt. 2798] at 5 ("Defendant has met his burden by demonstrating at least one compelling reason that also necessitates his release under this provision. Namely, the obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under 18 U.S.C. § 3142(i).").

Because of the emergent and dangerous Covent-19 outbreak, the particular vulnerability of BOP inmates to contracting the virus, and the persistent interferences with Mr. Zottola's access to counsel at the MCC, the Court should grant Mr. Zottola bail, or in the alternative, release him temporarily into home detention on the proposed conditions for the duration of the Covid-19 crisis.

Respectfully submitted,

      /s/ HEM
Henry E. Mazurek
Ilana Haramati
Meister Seelig & Fein LLP
125 Park Avenue, Suite 700
New York, New York 10017

*Counsel for Defendant Anthony Zottola*