

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

July 7, 2022

**VIA ECF**

Hon. Raymond J. Dearie
United States District Court Judge
United States Courthouse
225 Cadman Plaza East
Courtroom 10A S
Brooklyn, NY  11201

      Re:    *United States v. Anthony Zottola, et al.,* 18-cr-609 (RJD)

Dear Judge Dearie:

    We represent defendant Anthony Zottola in the above-referenced matter.  We write because our preparation for trial recently revealed that the government's prosecution team received Mr. Zottola's attorney-client privileged communications with several attorneys, including his prior criminal defense counsel in this case, which were contained on one of Mr. Zottola's electronic devices seized incident to his arrest.  Accordingly, we respectfully request that the Court hold a taint hearing to determine the circumstances of the prosecution team's review and use of Mr. Zottola's attorney-client privileged communications.  Such a hearing is necessary for the Court to determine whether dismissal of the Indictment or disqualification of the prosecution team is warranted here.

**I.**    **The Government's Prosecution Team Seized, And Apparently Reviewed, Mr. Zottola's Attorney-Client Privileged Communications**

    On June 17, 2019, the FBI seized 17 electronic from Mr. Zottola.  One of the cellular telephones seized, identified by the government as evidence number 1B117, was Mr. Zottola's personal telephone, which he used immediately prior to his arrest.[1]  The complete forensic copy of this cellular telephone produced by the government pursuant to Rule 16 spans over 26,000 pages.

    Our detailed review of this material in preparation for trial revealed that among the thousands of communications seized by the government from Mr. Zottola's cellular telephone, are text messages and email correspondence between Mr. Zottola and his prior criminal defense counsel Kerry Lawrence, Esq., which were exchanged in 2018 and 2019, and related to the investigation that ultimately resulted in Mr. Zottola's indictment.  The prosecution team also seized communications between Mr. Zottola and several

---

[1] Mr. Zottola also moved to suppress this cellular telephone based on the government's Fourth Amendment violations.  *See* ECF Docs. 334; 335.

Hon. Raymond J. Dearie
July 7, 2022
Page 2 of 4

other attorneys who provided legal representation in real estate and traffic matters. In total, there are hundreds of attorney-client communications that the prosecution team seized from Mr. Zottola's cellular telephone, all of which are presumptively protected by the attorney-client privilege.[2]

### II.   The Government Did Not Employ a Taint Team to Review Mr. Zottola's Cellular Telephone

To protect a defendant's attorney-client privileged communications from improper review by the prosecution team, the government must provide the defendant, who is "the putative privilege holder" with "notice and the opportunity to raise objections with the court before potentially privileged materials are disclosed to members of the prosecution team." *United States v. Avenatti*, 559 F. Supp. 3d 274, 284 (S.D.N.Y. 2021). It is thus standard practice in the Second Circuit for the government to use a taint team to review a defendant's electronic device that may contain attorney-client privileged materials. *See id.* at 282 ("Put simply, where, as here, material is already in the government's possession the use of the taint team to sift the wheat from the chaff constitutes an action respectful of . . . the protection of privilege.") (quotation marks, citations and modifications omitted); *In re Search Warrants Executed on Apr. 28, 2021*, No. 21-MC-425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 28, 2021) ("The use of a filter team is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client communications.") (citations omitted).

The government failed to utilize this standard mechanism to protect Mr. Zottola's privilege. The government was aware that Mr. Zottola was represented by counsel prior to his arrest, and thus that there was a high likelihood that there would be privileged communications on his cellular telephone even before searching the phone and seizing its contents. Nonetheless, the prosecution team proceeded to seize the entirety of Mr. Zottola's cellular communications for review and use against him, wholly disregarding Mr. Zottola's attorney-client privilege.[3]

On April 18, 2022, the government produced a complete copy of the cellular device to Mr. Zottola's co-defendants as part of Rule 16 discovery, including the attorney-client privileged communications. In this discovery production, the government stated that it was producing to Mr. Zottola's co-defendants the full contents of the cellular devices it had seized from Mr. Zottola. Specifically, the government described its production as "[e]xtraction reports for cellular telephones and electronic devices recovered from the defendant Anthony Zottola, Sr. and his residence, which were previously produced to defendant Zottola at ZOTTOLA 000032, and searched pursuant to a search warrant

---

[2] To preserve Mr. Zottola's attorney-client privilege, we are providing the Court with examples of these privileged communications *ex parte* and under seal for *in camera* review. *See, e.g., United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents ($61,900.00)*, 856 F. Supp. 2d 484, 490 (E.D.N.Y. 2012) (attorney-client privileged documents submitted to the court *ex parte* for *in camera* review).

[3] Of course, the government was aware of the typical taint team procedure used to segregate and review potentially attorney-client privileged materials. The government did precisely that in reviewing certain hard copy documents seized from Mr. Zottola's home office that related to a real estate attorney who advised the Zottola family.

(identified as 1B116, 1B117, 1B120, 1B121, 1B123, 1B125, 1 B148 and 1B150)." The prosecution team's production of the complete device identified as 1B117—including the attorney-client privileged communications—to Mr. Zottola's co-defendants, is strong indication that the prosecution team had improperly seized, received, and reviewed the attorney-client privileged materials as well.

### III. The Court Should Hold a Hearing to Determine the Extent to Which the Prosecuting AUSAs and Agents Reviewed Mr. Zottola's Attorney-Client Privileged Communications

Pursuant to *Kastigar v. United States*, 406 U.S. 441 (1972), and its progeny, a hearing is necessary "to determine whether the prosecution was tainted by exposure to privileged information" where there is a "factual relationship between the privileged information and the prosecution." *United State v. Sharma*, No. 18-CR-340 (LGS), 2019 WL 3802223, at *5 (S.D.N.Y. Aug. 13, 2019); *see also United States v. Schwimmer*, 924 F.2d 443, 446 (2d Cir. 1991) (applying *Kastigar* to breaches of defendant's attorney-client privilege). A hearing is warranted where there is "a connection between the *content* of the evidence to be used in the present prosecution and the protected information." *United States v. Hoey*, No. 15-CR-229 (PAE), 2016 WL 270871, at *4 (S.D.N.Y. Jan. 21, 2016) (quoting *United States v. Helmsley*, 941 F.2d 71, 82 (2d Cir. 1991)) (emphasis in original).[4]

Mr. Zottola easily meets this standard. The attorney-client privileged communications in question are inseparable from the instant prosecution. Many of the communications are with Mr. Zottola's prior defense counsel in this case, and relate to the grand jury investigation that resulted in his indictment here. Other privileged communications are with real estate counsel—significantly, the government has asserted that the Zottola family real estate business is connected to the charges against Mr. Zottola. *See, e.g.,* Gov. Opp. to Pretrial Mots., ECF Doc. 359 at 12 (June 1, 2022) ("The June [Search Warrant] Affidavit also included numerous facts connecting the Subject Offenses to the [Zottola] family's real estate business."). It is hard to conceive of a set of privileged communications more factually entwined with the instant prosecution. A hearing is thus necessary to determine which members of the prosecution team, both AUSAs and agents, reviewed Mr. Zottola's complete cellular communications, when that review occurred, how the taint interfaced with the government's investigation, and why the government never established a taint protocol to protect Mr. Zottola's attorney-client privileged communications.

Indeed, recently the court in *United States v. Landji*, similarly held a taint hearing based on evidence that the defendant's attorney-client privileged information was seized during his arrest, and that prosecuting "DEA personnel and U.S. Attorney's Office personnel improperly accessed these privileged documents." Both prosecuting AUSAs and agents testified at the taint hearing in *Landji*. *United States v. Landji*, No. 18-CR-601 (PGG), 2021 WL 5402288, at *1, *5 (S.D.N.Y. Nov. 18, 2021) (holding a *Kastigar* hearing at which case agents and prosecuting AUSAs testified based on evidence that the

---

[4] Prejudice to a defendant "as a result of communications that allegedly impinged upon the attorney-client privilege," by the government, can constitute a violation of the Sixth Amendment right to counsel. *United States v. Sanin*, 113 F.3d 1230 (2d Cir. 1997). Mr. Zottola's constitutional protections are at stake, further raising the import of a taint hearing.

prosecution team had received the defendant's attorney-client privileged materials seized during the course of the prosecution). The Court should order the same here.

At such a taint hearing, the government bears the burden not only to demonstrate "a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the [privileged material]." *Kastigar*, 406 U.S. at 460 (emphasis added). "Neither a mere assertion that the [privileged material] was not used" nor even proof that the prosecutor "had no direct or indirect access to the [privileged material] is sufficient" to dispel the taint. *United States v. Nanni*, 59 F.3d 1425, 1432 (2d Cir. 1995) (quotation marks and citations omitted).

Testimony from the prosecution team is thus essential for the government to bear its burden, and for the Court to assess the appropriate remedy based on the factual circumstances of the prosecution's review of the privileged communications, whether that remedy is: exclusion of the privileged communications and other related materials; disqualification of the prosecution team; or even dismissal the Indictment. *See United State v. Sharma*, No. 18-CR-340 (LGS), 2019 WL 3802223, at *4-5 (S.D.N.Y. Aug. 13, 2019) ("Defendants argue that, if the Indictment is not dismissed, the entire Prosecution Team should be disqualified from the case. Disqualification is a matter for the court's discretion. Courts have disqualified prosecutors who engaged in serious misconduct that prejudiced defendants.") (citations omitted).

Because the prosecution team improperly received Mr. Zottola's attorney-client privileged communications related to this case, the Court should hold a taint hearing to develop the relevant factual circumstances through testimony of the prosecution team members, and to determine the remedy required to adequately protect Mr. Zottola's attorney-client privilege.

Respectfully submitted,

_/s/ IH_
Henry E. Mazurek
Ilana Haramati

*Counsel for Defendant Anthony Zottola*

cc: Counsel of record (*via ECF*)