UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
UNITED STATES OF AMERICA,

        - against -

ANTHONY ZOTTOLA, SR.,

             Defendant.
-------------------------------------------------------- x

**MEMORANDUM & ORDER**
18-CR-609 (HG)

GONZALEZ, District Judge

      The government charges defendant Anthony Zottola and others with murder-for-hire, murder-for-hire conspiracy, unlawful use and possession of firearms, and causing death through the use of a firearm. The Court assumes familiarity with the government's theory of the case, as outlined in prior orders and the parties' submissions. Now before the Court is defendant's motion to suppress evidence obtained in the course of the government's investigation. ECF No. 335. The motion is denied.

## <u>LEGAL STANDARDS</u>

      The Fourth Amendment provides that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." <u>Kentucky v. King</u>, 563 U.S. 452, 459 (2011). Particularity mandates that a warrant do three things: (1) identify the specific offense for which probable cause has been established; (2) describe the place to be searched; and (3) specify the items to be seized by their relation to designated crimes. <u>United States v. Galpin</u>, 720 F.3d 436, 445-46 (2d Cir. 2013). "Particularity concerns frequently arise in circumstances where the description in the warrant of the place to be searched is so vague that it fails reasonably to alert executing officers to the limits of their search authority." <u>United States v. Clark</u>, 638 F.3d 89, 94 (2d Cir. 2011). However, the Fourth Amendment does not demand a "perfect description of the data to be searched and seized."

United States v. Ulbricht, 858 F.3d 71, 100 (2d Cir. 2017), overruled on other grounds by Carpenter v. United States, 138 S. Ct. 2206 (2018). The level of specificity required in a warrant depends on many factors, including the nature of the crime and evidence sought. See United States v. Cioffi, 668 F. Supp. 2d 385, 391 (E.D.N.Y. 2009). For example, more generic descriptions of items to be seized may be justified when complex criminal schemes are alleged, United States v. Gotti, 42 F. Supp. 2d 252, 274 (S.D.N.Y. 1999), and search warrants "covering digital data may contain some ambiguity," Ulbricht, 858 F.3d at 100 (cleaned up).

The Fourth Amendment's prohibition on overbroad warrants demands that probable cause support the breadth of the seizures authorized by warrant. Galpin, 720 F.3d at 446. For example, in Galpin, the Second Circuit concluded that a warrant authorizing searches for child pornography was facially overbroad where the only crime specified in the warrant was a failure to register as a sex offender and no probable cause existed to believe that the defendant possessed or produced child pornography. Id. at 448.

Finally, in reviewing Zottola's motion to suppress evidence based on allegedly infirm search warrants, our standard of review is deferential. "The duty of a court reviewing the validity of a search warrant is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993) (cleaned up). "A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." Id. (internal citation and quotations omitted).

## DISCUSSION

### A.  The Home and Devices Warrants

On June 17, 2019, the government obtained a warrant to search Zottola's Larchmont, New York residence for evidence, fruits, and instrumentalities of the subject offenses. See ECF No. 335, Ex. I. On June 18, 2019, the government obtained a warrant to search two cell phones discovered during Zottola's arrest. Id. Ex. K. Zottola asserts that these two warrants (the "Home and Devices Warrants") violated the Fourth Amendment's requirement of particularity and its prohibition on overbroad searches. Zottola further asserts that the searches and seizures carried out by the warrants exceeded the scope of what the warrants authorized.

1.  *Particularity*

In challenging the particularity of the Home and Devices Warrants, Zottola asserts that they authorized the "search and seizure of all of Mr. Zottola's communications in any timeframe, all real estate records, all vehicle records, and all financial records of any kind" and therefore "provided virtually no direction limiting the searching agents to materials for which there was a showing of probable cause." ECF No. 335 at 51.

The Court disagrees. The Home and Devices Warrants were more particularized than Zottola acknowledges. The warrants listed the subject offenses, the places and devices to be searched, and specified the categories of items to be seized. Contrary to Zottola's depiction, the categories were not open-ended and contained terms limiting their scope. The warrants authorized, for example:

- The seizure of text messages and call logs "constituting evidence, fruits or instrumentalities *of the above-listed crimes*";
- "[A]ny writings, documents records or other item, *indicating a connection between Anthony Zottola and Bushawn Shelton, or others connected to the Subject Offenses*";
- Information "connecting Anthony Zottola, Sr. to other individuals *involved in the crimes committed*"; and

3

- "[I]nternet search results *related to the planning and cover up of the crimes committed*."

ECF No. 335 Ex. I (emphasis added); ECF No. 335, Ex. K, Attachment B (emphasis added). Even the broadest categories of items to be seized—for example "all bank records, checks, credit card bills, account information, and other financial records," id. Ex. K, and "any records related to the Zottola family's assets including its real estate and real estate ventures," id. Ex. I—were sufficiently specific to reasonably convey to agents which items could be searched for evidence of the subject crimes. See United States v. Riley, 906 F.2d 841, 843 (2d Cir. 1990) (upholding a warrant authorizing seizure of "records of the distribution of cocaine . . . including but not limited to, bank records, brokerage house records, business records"). A warrant permitting the search and seizure of financial records for evidence of a murder for hire scheme is sufficiently particular to "alert executing officers to the limits of their search authority." Clark, 638 F.3d at 94; United States v. Nejad, 436 F. Supp. 3d 707, 725 (S.D.N.Y. 2020) ("A warrant may be broad, in that it authorizes the government to search . . . for a wide range of potentially relevant material, without necessarily violating the particularity requirement.") (cleaned up).

Moreover, by containing illustrative lists, these categories provided guidance to law enforcement about the types of items to be seized. United States v. Jacobson, 4 F. Supp. 3d 515, 524 (E.D.N.Y. 2014) (holding warrants were sufficiently particular because they "referenced particular crimes and used illustrative lists as a means of limiting the items to be seized").

We conclude by noting that Zottola himself appears to appreciate that the Home and Devices Warrants were sufficiently circumscribed, stating elsewhere in his submissions that the warrants authorized only "limited seizures." ECF No. 335 at 37. In another submission, Zottola goes further, observing that the Home and Devices Warrants "did not purport to permit the government to seize the full contents of Mr. Zottola's devices; instead, they limited the searches

4

and seizures to no more than 10 categories of specific materials and data." ECF No. 370 at 14 n.4. As demonstrated by Zottola's own words, the Home and Devices Warrants were sufficiently particular to satisfy the Fourth Amendment.

    2.  *Overbreadth*

Zottola argues that the Home and Devices Warrants were overbroad because some of the categories of items to be searched and seized exceeded the scope of any probable cause determination. ECF No. 335 at 47-48. According to Zottola, the warrants should not have authorized a search of broad categories like *all* communications or *all* real estate records because the supporting affidavits did not establish probable cause that every record contained therein would constitute evidence of the subject offenses. See id. at 49 ("[T]here was nothing suggesting that there could be evidence of the listed crimes in *all* communications [and no evidence] to believe that *all* of the Zottola family real estate records . . . constituted evidence or instrumentalities of the alleged crimes."). But probable cause is not an *ex ante* guarantee that evidence will be found within each individual item to be searched. This position finds no basis in the law and ignores the fact that the purpose of a warrant is to govern a search for evidence based on a probability determination. See Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir.2007) (probable cause "is demonstrated where the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place") (cleaned up).

The breadth of the Home and Devices Warrants was supported by probable cause. See ECF No. 335, Ex. H ¶¶ 14-24; Ex. J ¶¶ 8-13. The affidavits in support of the warrants established in detail Zottola's use of his home, his cell phones, and his other electronic devices to facilitate the scheme, and outlined the connection between the Zottola family real estate holdings and the subject offenses. See Ex. H ¶¶ 26, 30-39; 77-81. Indeed, Zottola admits that the affidavits

5

established a connection between the sale of Zottola family real estate and the subject offenses and that there was probable cause to seize Zottola's communications with co-conspirator Bushawn Shelton. See ECF No. 335 at 49. Similarly, Zottola elsewhere acknowledges that the Home and Devices Warrants authorized the search and seizure of "limited aspects of Mr. Zottola's devices," and "specifically outline probable cause related to the charged murder-for-hire scheme and attendant weapons crimes." ECF No. 335 at 40. Accordingly, the magistrate had a substantial basis for concluding that the categories of evidence sought in the Home and Devices Warrants were supported by probable cause.

In sum, while the warrants contemplated a broad set of searches, the nature of the scheme for which probable cause was established—a conspiracy lasting more than one year involving numerous suspects and comprising multiple violent acts and possible motives—and the totality of the circumstances supporting probable cause made a broad search constitutionally permissible. See United States v. Hernandez, 09-cr-625, 2010 WL 26544, at *8 (S.D.N.Y. Jan. 6, 2010) (a warrant calling for "fairly broad" seizure categories is permitted if "the affidavit in support of the search warrant application provides the necessary basis for a determination of probable cause to seize items in each of these categories").

3. *The execution of the Home and Devices Warrants*

Zottola next argues that the evidence seized by agents executing the Home and Devices Warrants should be suppressed because the searches and seizures exceeded the scope of the warrants. As a general matter, "searches conducted pursuant to a warrant would likely fall within its protection." Clark, 638 F.3d at 100. Moreover, evidence seized pursuant to a warrant will not be suppressed if agents acted "'in objectively reasonable reliance' on [the] search warrant." United States v. Ganias, 824 F.3d 199, 221 (2d Cir. 2016) (quoting United States v. Leon, 468

6

U.S. 897, 922 (1984)). However, when a search exceeds the scope of its authorizing warrant, it becomes a warrantless search and violates the Fourth Amendment. United States v. Voustianiouk, 685 F.3d 206, 212 (2d Cir. 2012).

Zottola fails to explain with any specificity which aspects of the searches and seizures exceeded the scope of the warrants. Rather, his objections are better characterized as dismay at the volume of evidence seized. In particular, he complains about the number of devices seized, ECF No. 335 at 36-37, and the irrelevant and personal nature of certain materials seized, id. at 68-69.

The Home and Devices Warrants necessarily authorized agents to seize and later review devices and records. This is not a case where an isolated set of responsive materials—like drug paraphernalia—could be immediately identified and isolated. It is the nature of electronic data that irrelevant, personal materials will be comingled with relevant evidence, requiring seizure of the devices in question to separate the wheat from the chaff. See United States v. Metter, 860 F. Supp. 2d 205, 213-214 (E.D.N.Y. 2012) ("Unlike warrants seeking readily identifiable evidence such as narcotics or firearms, an onsite search of a computer for the evidence sought by a warrant is not practical or even possible in some instances . . . The Court does not expect the government to make onsite determinations of whether a file or document contained on a hard drive or in an email account falls within the scope of the warrant."). Federal Rule of Criminal Procedure 41(f)(1)(B) reflects the difficulties inherent in making on-the-spot responsiveness determinations with respect to electronic data, expressing that a warrant for the seizure of electronically stored information "authorizes a later review of the media or information consistent with the warrant." Zottola's complaints to the contrary, which do not outline any steps agents should have taken to more reasonably search for materials authorized by warrant, are simply divorced from reality.

Moreover, after executing the warrants obtained in this case, the government narrowed its review of Zottola's property: of the 19 electronic devices seized, 14 were imaged and reviewed for responsiveness to the warrants. ECF No. 359 at 37, 203-204. Following review, the government informed Zottola that it intended to introduce evidence from seven of Zottola's devices at trial.[1] This stands in stark contrast to the government's conduct in <u>Metter</u>, where Judge Irizarry suppressed evidence based on agents' imaging of all items seized with no plan to cull non-responsive items. 860 F. Supp. 2d at 215 (finding "government's retention of all imaged electronic documents, including personal emails, without any review whatsoever to determine not only their relevance to this case, but also to determine whether any recognized legal privileges attached to them, is unreasonable and disturbing").

Zottola also presents arguments for suppression based on delay and the "continuous" nature of the government's searches. These are similarly unavailing. Zottola relies principally on the government's April 2022 "warrant returns" as evidence that the government retained the materials it seized for approximately three years before searching them. ECF No. 335 at 42. Zottola alternatively accuses the government of conducting "continuous searches" over the course of those three years. <u>Id.</u> at 42-43. But regardless of how Zottola frames it, the time that elapsed between the initial seizure of Zottola's property and the production of "warrant returns" does not mandate suppression. As the government explains, the "warrant returns" or "extraction reports" provided in April do not reflect when the government searched the devices; they reflect when the government generated the reports. ECF No. 359 at 207. Zottola's theory that the government retained the materials for years, waiting to review such materials until four months

---

[1] The government produced a log of evidence obtained from the June search of Zottola's Residence in a discovery production dated October 5, 2020, and copies of all forensic images to Zottola in a discovery production dated November 4, 2019. ECF No. 359 at 37.

before trial, is unrealistic at best. Moreover, the volume and complexity of the records seized by the government counsels in favor of flexibility in determining the reasonableness of the searches' duration. See United States v. Sosa, 379 F. Supp. 3d 217, 222 (S.D.N.Y. 2019) (finding searches to be "within the bounds of reason," declining to suppress evidence on account of the pace at which they were performed, and noting "the most logical (and fairly obvious) explanation [for delay] is one of resource allocation").

Finally, the evidence discovered over the course of the searches is not subject to the exclusionary rule because the agents relied on the Home and Devices Warrants in good faith. Suppression is a "drastic remedy" that is properly confined to situations in which it is necessary to deter official misconduct. United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988); see also United States v. Leon, 468 U.S. 897, 908 (1984); Herring v. United States, 555 U.S. 135, 140 (2009) (explaining that suppression is the courts' "last resort, not our first impulse"). The government submits that "[g]iven the [magistrate] judges' repeated authorization to conduct searches, no reasonable officer would question his or her reliance on the warrant." ECF No. 359 at 200. We agree. Zottola has set forth no facts sufficient to undercut the "presumption of reasonableness" that attaches to law enforcement's execution of a judicially authorized search warrant. Clark, 638 F.3d at 100. The Court finds no grounds to suppress the searches pursuant to the Home and Devices Warrants.

### B.  **The Verizon Warrant**

In October of 2018, the government obtained a warrant to search for information associated with Mr. Zottola's cellular phone controlled by Verizon ("Verizon Warrant"). ECF No. 335, Exs. N-O. Zottola moves to suppress evidence uncovered pursuant to that warrant, arguing that it lacked particularity and the search exceeded the warrant's scope.

9

1. *Particularity*

The Verizon Warrant satisfies the three particularity requirements: it describes the subject offenses, id. Ex. O, Attachment B § II, describes the property to be searched, id. Attachment A, and lists items to be seized from the property in question, id. Attachment B § I. Specifically, the Verizon Warrant lists information to be disclosed by Verizon, and then allows agents to seize from that subset of data any information constituting evidence or instrumentalities of the subject offenses. Id. Attachment B. The warrant limited Verizon's disclosures to a date range of November 1, 2017 through October 12, 2018. Id.

Neither the categories of information included—for example, names, addresses, times and durations of calls, and cell tower data—nor the subject offenses contained in the Verizon Warrant, are so vague as to violate the Fourth Amendment by leaving agents without guidance as to what the warrant permitted. See United States v. Folks, No. 20-cr-3267, 2021 WL 5987009, at *1 (2d Cir. Dec. 17, 2021) ("A warrant satisfies the particularity requirement if it is sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize.") (cleaned up).

Zottola cites to United States v. Wey, 256 F. Supp. 3d 355 (S.D.N.Y. 2017), for the proposition that a warrant must provide direction to law enforcement that goes beyond enumerating the criminal offences for which probable cause is established. ECF No. 335 at 58. But Wey is inapposite; the warrants at issue there "neither cite[d] criminal statutes nor in any way describe[d] any suspected criminal conduct." Id. at 348. The same is true for United States v. Zemlyansky, 945 F. Supp. 2d 438 (S.D.N.Y. 2013), another case cited by Zottola, where the court suppressed the fruits of a warrant that refenced criminal statutes with respect to only one of nine search categories and therefore offered "not a single word of guidance regarding the type of

10

criminal offense under investigation" with respect to the remaining categories. Id. at 454. Contrary to Zottola's inaccurate characterization of this caselaw, neither Wey nor Zemlyansky establish that the Verizon Warrant, which did spell out the criminal offenses at issue, fails the particularity requirement.

2. *The execution of the Verizon Warrant searches*

Zottola objects to the seizure of his Verizon records on the ground that the agents seized everything produced by Verizon without reference to the crimes charged. This argument suffers from the same misplaced expectation, rejected above, that law enforcement somehow should have separated responsive data from non-responsive data without actually reviewing what Verizon produced. Cf. Fed. R. of Crim. Proc. 41(f)(1)(B); Metter, 860 F. Supp. 2d at 213-214. Once again, Zottola fails to propose any alternative method for a search of the data provided by Verizon short of reviewing the contents in their entirety for evidence of the subject offenses. Instead, he simply declares the seizure excessive and demands suppression in full. This is no basis for suppression.

Furthermore, Zottola offers no argument, and we find no reason to conclude, that law enforcement failed to act in good faith when executing the Verizon Warrant. Zottola's motion to suppress evidence recovered pursuant to the Verizon Warrant is denied.

**C.  Evidence Seized from Shelton's Devices**

We also deny Zottola's motion to suppress evidence seized from Bushawn Shelton's devices. ECF No. 335 at 61-69. "[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." Smith v. Maryland, 442 U.S. 735, 743-44 (1979). Zottola voluntarily sent messages to Shelton, which were stored on Shelton's phone.

Zottola therefore has no legitimate expectation of privacy in the data he sent to Shelton and lacks standing to seek its suppression.

<u>**CONCLUSION**</u>

In the end, despite volumes of briefing and outraged exhortations by Zottola and his co-defendants, there can be no serious question that the Magistrate Judges' findings of probable cause were supported by the evidence presented and that given the circumstances of the case, the scope of the warrants and the manner of execution were reasonable and consistent with the authority granted. Indeed, despite vociferous claims to the contrary, no advocate has suggested a reasonable and responsible alternative to the actions taken. For the foregoing reasons, Zottola's motion to suppress are denied.

SO ORDERED.

Dated: Brooklyn, New York                    /s/ Hector Gonzalez
       August 25, 2022                          HECTOR GONZALEZ
                                                       United States District Judge